IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:21-CV-82129-DMM

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

      Plaintiff,

v.

PATRIOT FINE FOODS LLC,

      Defendant.

_____

## MOTION FOR DEFAULT FINAL JUDGMENT

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 55(b)(2), hereby moves for entry of a Default Final Judgment against defendant Patriot Fine Foods LLC ("Defendant"), and states as follows:

## PROCEDURAL SUPPORT FOR DEFAULT FINAL JUDGMENT

1. On November 24, 2021, Plaintiff filed its Complaint in this action. The Complaint contains a single cause of action for copyright infringement against Defendant.

2. On December 1, 2021, Defendant was served with a copy of the Summons and Complaint in this action. See D.E. 6.

3. On January 15, 2022 (following expiration of Defendant's response deadline), Plaintiff filed its Motion for Clerk's Default [D.E. 9].

4. On January 18, 2022, the Clerk entered a Clerk's Default [D.E. 10] against Defendant.

## FACTUAL SUPPORT FOR DEFAULT FINAL JUDGMENT[1]

### I.   Plaintiff's Business and History[2]

5.      Plaintiff is in the business of licensing high-end, professional photographs for the food industry.

6.      Plaintiff generally operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a monthly fee of $999.00 (https://preparedfoodphotos.com/featured-subscriptions/) for access to its library of professional photographs.

7.      Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment (https://preparedfoodphotos.com/terms.of.use.php) to avoid scenarios whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.

8.      Although Plaintiff generally does not license individual photographs, its standard license agreement (in place at the time of the infringements at issue in this lawsuit) does specify that, in the event a licensee continues to use any of its photographs following termination of the license, each individual photograph in use may continue to be licensed on a rights-managed basis for a fee of $8,000.00, per image and per use.

9.      Plaintiff's business model relies on its recurring monthly subscription service and

---

[1]      "When a defendant defaults, it admits as true all well-pleaded factual allegations in the complaint." Enable Creative, LLC v. Charles Rutenberg Realty, LLC, No. 19-20789-CIV-MARTINEZ/MCALILEY, 2019 U.S. Dist. LEXIS 155224, at *2 (S.D. Fla. Sep. 10, 2019) (citing Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007)).

[2]      The facts set forth herein are based upon the well-pleaded allegations of the Complaint, the February 8, 2022 Declaration of Rebecca Jones (the "Jones Decl."), a true and correct copy of which is attached hereto as Exhibit "A," and the February 8, 2022 Declaration of Daniel DeSouza (the "DeSouza Decl."), a true and correct copy of which is attached hereto as Exhibit "B."

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

the income derived therefrom such that Plaintiff can continue to maintain its impressive portfolio.

10.     Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers.  To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only.  Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

## II.     The Work at Issue in this Lawsuit

11.     This lawsuit concerns one (1) photograph titled "RawBeefLondonBroil001_ADL" (the "Work") owned by Plaintiff for which Plaintiff serves as the licensing agent.  The Work is available for license on the above-stated terms.

12.     The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on January 11, 2017 and was assigned Registration No. VA 2-026-514.  A copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit A thereto.

## III.     Defendant's Unlawful Activities

13.     Defendant owns and operates an online wholesale delivery butcher shop in New Jersey through which it offers for sale 200+ prime meats, seafood, produce, and gourmet items.

14.     Defendant advertises/markets its business primarily through its commercial website (https://patriotfinefoods.net/),                     social                     media                     (e.g. https://www.facebook.com/Patriotfinefoods/?ref=page_internal), and other forms of advertising.

15.     On a date after Plaintiff's above-referenced copyright registration of the Work, Defendant                     published                     the                     Work                     on                     its

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

https://shop.patriotfinefoods.net/?c=604fb8c9373a5d00274175de website in connection with the sale of "USDA Prime Angus London Broil":



A true and correct copy of screenshots of Defendant's website, displaying the copyrighted Work, are attached to the Complaint as Exhibit B thereto.

16.     The foregoing display of the Work on Defendant's website was accessible and was in fact accessed from persons in the State of Florida.

17.     Defendant is not and has never been licensed to use or display the Work.  Defendant never contacted Plaintiff to seek permission to use the Work in connection with its website/advertising or for any other purpose – even though the Work that was copied is clearly professional stock photography that would put Defendant on notice that the Work was not intended for public use.

18.     Defendant utilized the Work for commercial use – namely, in connection with the marketing of Defendant's business and sale of its meat product.

19.     Upon information and belief, Defendant located a copy of the Work on the internet

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

20.     Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered Defendant's unauthorized use/display of the Work in approximately October 2021.

21.     Plaintiff's primary business is the creation of new photo/video content and licensing such content to supermarkets, ad agencies, etc.  To ensure that Plaintiff's valuable intellectual property is not being misappropriated (which necessarily lowers the value thereof), Plaintiff employs a full-time paralegal and other staff that each (when time permits) perform reverse-image searches using Google Images (https://www.google.com/imghp?hl=en) and review grocery store electronic/print ads to determine whether Plaintiff's images are being misused.

22.     Plaintiff's staff generally searches using a rotating sub-set of photographs that may be illegally/improperly published by non-licensees.  Given the volume of Plaintiff's library, Plaintiff was reasonably unable to discover Defendant's improper use of the Work at issue in this lawsuit prior to the aforementioned date of discovery.

23.     Following Plaintiff's discovery of Defendant's infringement, Plaintiff sent at least one (1) infringement notice to Defendant to notify it of the impermissible use.  Defendant ignored the notice(s) and did not otherwise respond to Plaintiff.

24.     Ultimately, Plaintiff was forced to retain undersigned counsel to pursue this matter. Undersigned counsel itself sent another infringement notice (via e-mail to (homedelivery@patriotfinefoods.net) and via Federal Express to Defendant's corporate address) with a draft copy of the Complaint that would be filed if Plaintiff continued to be ignored.  No response was ever received.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

## ARGUMENT

**I.      Applicable Legal Standards**

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment.  First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default.  Fed. R. Civ. P. 55(a).  Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2).  "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment, and is barred from contesting on appeal the facts thus established." Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987).

The Court must review the sufficiency of the complaint before determining if a moving party is entitled to default judgment.  See U.S. v. Kahn, 164 F. App'x 855, 858 (11th Cir. 2006) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206) (5th Cir. 1975); Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007).  "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to show its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  If the admitted facts are enough to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount.  See Nishimatsu, 515 F.2d at 1206.  An evidentiary hearing on damages is not required by Rule 55, and it is within the Court's discretion to choose whether to hold such a hearing. See Fed. R. Civ. P. 55(b)(2); SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); Tara Productions, Inc. v. Hollywood Gadgets, Inc., 449 F. App'x 908, 911-12 (11th Cir. 2011).

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

## II.      Plaintiff is Entitled to Judgment on its Claim for Copyright Infringement

The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)]... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a).  "Copyright infringement has  two elements: (1) ownership of a valid copyright, and (2) copying of protectable elements." Home Design Servs., Inc. v. Turner Heritage Homes Inc., 825 F.3d 1314, 1320 (11th Cir. 2016).

### 1.      Plaintiff Owns a Valid Copyright

With respect to the first element, a certificate of registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).  "Once a plaintiff produces a valid registration, the burden shifts to the defendant to establish that the work in which the copyright claimed is unprotectable." Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1233 (11th Cir. 2010).  Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights as set forth above.  By virtue of its default, Defendant does not have any right to challenge Plaintiff's registration/ownership of a valid copyright.

### 2.      Defendant Copied the Work

The copying element of an infringement claim has two components. Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1232 (11th Cir. 2010).  First, a plaintiff must demonstrate that the defendant copied the plaintiff's work as a factual matter. Id.  Second, the plaintiff must establish "substantial similarity" between the allegedly infringing work and the elements of the copyrighted work that are legally protected. Id. at 1233.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

Here, the screenshots of Defendant's website unequivocally show Defendant's copying of the Work. Defendant's default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendant copied and published a duplicate image of the Work. Thus, Defendant undisputedly copied Plaintiff's copyrighted work and a Final Default Judgment should be entered against Defendant on Count I of the Complaint.

## III.   Defendant's Infringement was Willful

Willful infringement occurs when a defendant acts "with 'actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright.'" Arista Records, Inc. v. Beker Enterprises, Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (J. Cohn) (citing Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc., 658 F. Supp. 458, 464 (E.D.Pa.1987)). "Moreover, this Court may infer that Defendants willfully infringed Plaintiffs' copyrights because of Defendants' default." Id. at 1313 (citations omitted). When awarding increased damages in the context of Section 504(c)(2), "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." Cable/Home Communication Corp. v. Network Productions, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted).

Here, Plaintiff took the extra step of notifying Defendant of its infringement pre-lawsuit. Defendant ignored Plaintiff's attempts to communicate directly and subsequently ignored undersigned counsel's e-mail and Federal Express (which included a draft copy of the Complaint in this lawsuit and warned Defendant such would be filed). In fact, at the time this motion is being filed, the Defendant has not removed the infringing photograph from its website (https://shop.patriotfinefoods.net/?c=604fb8c9373a5d00274175de) despite being placed on notice by this lawsuit and the other communications sent to Defendant. Defendant's refusal to pay a

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

reasonable licensing fee and refusal to respond to multiple infringement notices demonstrates that Defendant had actual knowledge, or at least acted with reckless disregard, of the fact that its conduct infringed upon Plaintiff's exclusive copyrights in the Work.

Accordingly, Defendant's default and the well-pled facts of the Complaint, which are admitted by Defendant's default, establish that Defendant's infringement of the Work was willful and deliberate.

## IV.    Plaintiff's Damages

### A.    *Actual Damages*

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages are "often measured by the revenue that the plaintiff lost as a result of the infringement, which includes lost sales, lost opportunities to license, or diminution in the value of the copyright." Lorentz v. Sunshine Health Prods., No. 09-61529-CIV-MORE, 2010 U.S. Dist. LEXIS 148752, at *12 (S.D. Fla. Sep. 7, 2010).

The copyright owner may also recover the fair market value of the licensing fee that would have been charged for the work that was infringed. Id. at 15. To demonstrate entitlement to a reasonable license fee, the fair market value of an infringed work may be established by "evidence of benchmark licenses, that is, what licensors have paid for use of similar work." Thornton v. J. Jargon Co., 580 F. Supp. 2d 1261 (M.D. Fla. 2008) (citing Montgomery v. Noga, 168 F.3d 1282, 1295 n.19 (11th Cir. 1999)).

As set forth above and in the declaration of Rebecca Jones (Plaintiff's Secretary), Plaintiff exclusively operates on a subscription basis whereby it provides access to its library at $999.00 per month with a minimum twelve (12) month contract commitment (i.e. a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year).

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Plaintiff generally does not license individual photographs as doing so greatly diminishes the value of Plaintiff's subscription model.  Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc.  Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products/services.

Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of Plaintiff's library.  Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees.  Plaintiff incurs these expenses (payroll etc.) to protect the integrity of its library.

Plaintiff's library of photographs was created over a 15 – 20 year period of time (with new creative works being made through the present date).  Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography.  All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal.  For any image (including the one at issue in this lawsuit), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1 – 2 for inclusion in Plaintiff's library. For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs

so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising.

When Plaintiff's staff discovers an existing (i.e. published and available for viewing on the internet) infringement of one of its photographs, Plaintiff creates an infringement notice on the date of discovery or within 1 – 2 days thereafter. The infringement notice identifies the date of discovery, displays the subject photograph, and displays a screenshot of the infringer's alleged use together with a website URL (if available) where the infringement is located. A true and correct copy of Plaintiff's infringement notice with respect to the Work at issue in this lawsuit is attached to the Jones Decl.

The aforementioned infringement notices show that the Work was published by Defendant at least as of October 2021. Defendant's failure to participate in this lawsuit has limited Plaintiff's ability to conduct discovery to fully discover the extent of its infringement and/or the exact date on which the Work was uploaded. Sources such as the Wayback Machine and inspecting the URL/page source of the website were unhelpful in determining precisely when the Work was published by Defendant. This tremendously hinders Plaintiff's ability to determine its damages because, for each year that Defendant published the Work, Plaintiff would be owed an annual license fee of $11,988.00. Thus, if Defendant published the Work in 2018, Plaintiff would have lost 3x annual licensing terms (as a result of the Supreme Court's 3-year lookback period) equivalent to $35,964.00 in actual damages. Here, it is only known that the Work was published as of October 2021 (when Plaintiff initially discovered the infringement) and remains published by Defendant *today*. Given these facts, Plaintiff proffers that the cost for the contractual minimum 1-year license ($11,988.00) is the most accurate measure of Plaintiff's actual damages based on presently-known facts.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

Defendant's inaction and refusal to participate in this lawsuit suppressed the information necessary to fully calculate Plaintiff's actual damages. Similarly, Defendant's refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendant that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses. To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Defendant solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

In view of the foregoing, actual damages are insufficient due to Defendant's refusal to appear and participate in discovery, and Plaintiff thus elects to seek an award of statutory damages for Defendant's willful infringement of Plaintiff's copyrighted Work.

### B.      Statutory Damages are Appropriate for Defendant's Willful Copyright Infringement

Pursuant to 17 U.S.C. § 504(c), Plaintiff hereby elects to recover statutory damages for Defendant's infringement of Plaintiff's exclusive rights in the copyrighted Work, and enhancement of its statutory award based upon the willfulness of such infringement. Where (as here) willful infringement has occurred, courts in this Circuit will generally look to a plaintiff's actual damages and award 2x – 3x to properly account for statutory damages. See, e.g. Corson v. Gregory Charles Interiors, LLC, No. 9:19-cv-81445, 2020 U.S. Dist. LEXIS 142932, at *5-7 (S.D. Fla. Aug. 7, 2020) (trebling the plaintiff's actual damages after applying a scarcity multiplier); Buttnugget Publ'g v. Radio Lake Placid, Inc., 807 F. Supp. 2d 100, 110-11 (N.D.N.Y. 2011) ("[T]o

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees.").

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work. See 17 U.S.C. § 504(c)(1). However, as discussed above, Defendant's conduct – as well as its decision not to defend against Plaintiff's claim – demonstrates that its conduct is willful. Given the circumstances of the instant case, Plaintiff submits that an award of statutory damages in the amount of *$35,964.00* ($11,988.00 x 3) under 17 U.S.C. § 504(c)(2) is appropriate to compensate Plaintiff for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages, and to deter future violations of copyright law.

### C.    Full Costs and Reasonable Attorneys' Fees are Appropriate

Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party… the court may also award reasonable attorney's fee to pay the prevailing party as part of the costs." Upon entry of a final judgment, Plaintiff is the prevailing party in this action. In view of the willful nature of Defendant's infringement and its failure to defend or otherwise participate in this action, leading to unjustified delays and increased costs and fees, an award of full costs and attorney's fees to Plaintiff is appropriate.  Additionally, 17 U.S.C. § 1203(b)(5) provides "the court … in its discretion may award reasonable attorney's fees to the prevailing party…," providing a second statute for an award of Plaintiff's full costs and attorney's fees.  Accordingly, Plaintiff requests the Court to award costs and attorney's fees in the amount of $2,525.20 consisting of costs in the amount of $500.20 and fees in the amount of $2,025.00. The amount and reasonableness of the costs and fees are established by the Declaration of Daniel

DeSouza, submitted concurrently herewith.

## V.      Entry of a Permanent Injunction is Appropriate

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 USCS § 502. Injunctions are regularly issued pursuant to Section 502 because "the public interest is the interest in upholding copyright protections"; and courts also regularly issue injunctions as part of default judgements. Arista Records, 298 F. Supp. 2d at 1314 (entering permanent injunction against Defendants with respect to plaintiff's copyrighted work, including plaintiff's work to be created in the future).

As established by the well-pled facts of the Complaint and admitted by Defendant's default, this Court has proper jurisdiction over this action.  Defendant's conduct has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law.  For example, the ability of Defendant to use Plaintiff's work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's works if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiffs photographs for their own commercial purposes without paying any fee at all.

Accordingly, Plaintiff requests the Court to enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, vendors and assigns, and all those in active concert and participation with Defendant, prohibiting

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

it from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to enter final default judgment against Defendant; award Plaintiff $35,964.00 for Defendant's infringement of the Work, award Plaintiff its costs and attorneys' fees as set forth in the DeSouza Decl., award Plaintiff prejudgment interest, permanently enjoin Defendant from infringing activities; and for any other relief the Court deem just and proper.  A proposed order is filed herewith.


Dated: February 8, 2022.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com
james@copycatlegal.com

By: /s/ James D'Loughy, Esq._____
    James D'Loughy, Esq.
    Florida Bar No.: 0052700
    Daniel DeSouza, Esq.
    Florida Bar No.:  19291

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record. I further certify that on February 8, 2022, I served the foregoing document via US Mail to:   Patriot Fine Foods LLC, 16 Quincy Place, Kearny, NJ 07032.

/s/ James D'Loughy___

James D'Loughy

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:21-CV-82129-DMM

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

     Plaintiff,

v.

PATRIOT FINE FOODS LLC,

     Defendant.

_____

## DECLARATION OF REBECCA JONES

REBECCA JONES does hereby declare pursuant to 28 U.S.C. § 1746:

1.     I am over the age of 18 and otherwise competent to testify. I make the following statements based on personal knowledge.

2.     I am the Secretary of plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff").

3.     Plaintiff is in the business of licensing high-end, professional photographs for the food industry.

4.     Plaintiff generally operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a monthly fee of $999.00 (https://preparedfoodphotos.com/featured-subscriptions/) for access to its library of professional photographs.

5.     Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment (https://preparedfoodphotos.com/terms.of.use.php) to avoid scenarios

whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.

6.     Plaintiff's business model relies on its recurring monthly subscription service and the income derived therefrom such that Plaintiff can continue to maintain its impressive portfolio.

7.     Plaintiff generally does not license individual photographs as doing so greatly diminishes the value of Plaintiff's subscription model.  Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc.  Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products/services.

8.     Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of Plaintiff's library.  Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees.  Plaintiff incurs these expenses (payroll etc.) to protect the integrity of its library.

9.     Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers.  To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only.  Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

10.     Plaintiff's library of photographs was created over a 15 – 20 year period of time

(with new creative works being made through the present date).

11.     Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography.  All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal.  For any image (including the one at issue in this lawsuit), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1 – 2 for inclusion in Plaintiff's library.  For any given photograph, Plaintiff has additional costs associated with post-processing the image using specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print or digital media advertising.

12.     When Plaintiff's staff discovers an existing (i.e. published and available for viewing on the internet) infringement of one of its photographs, Plaintiff creates an infringement notice on the date of discovery or within 1 – 2 days thereafter.  The infringement notice identifies the date of discovery, displays the subject photograph, and displays a screenshot of the infringer's alleged use together with a website URL (if available) where the infringement is located.  A true and correct copy of such infringement notice with respect to the work at issue in this lawsuit is attached hereto as Exhibit "1."

13.     This lawsuit concerns one (1) photograph (the "Work") owned by Plaintiff for which Plaintiff serves as the licensing agent.  The Work is available for license on the above-stated terms and all were created through the same or substantially similar creative process as described

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

above.

14.     The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on January 11, 2017 and was assigned Registration No. VA 2-026-514.  A copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit A thereto.

15.     We are not aware of any privately owned library of photography matching the extensiveness and quality of Plaintiff's library, especially when considering the overall theme/vision of creating photographs attractive to the average consumer to encourage such consumer to actually buy the product at issue (rather than an overly-complex image that leads the average consumer to believe that he/she could never create such a meal).

16.     Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered Defendant's unauthorized use/display of the one photograph at issue in approximately October 2021.

17.     Plaintiff's primary business is the creation of new photo/video content and licensing such content to supermarkets, ad agencies, etc. To ensure that Plaintiff's valuable intellectual property is not being misappropriated (which necessarily lowers the value thereof), Plaintiff employs a full-time paralegal and other staff that each (when time permits) perform reverse-image searches using Google Images (https://www.google.com/imghp?hl=en) and review grocery store electronic/print ads to determine whether Plaintiff's images are being misused.

18.     Plaintiff's staff generally searches using a rotating sub-set of photographs that may be illegally/improperly published by non-licensees.  Given the volume of Plaintiff's library, Plaintiff was reasonably unable to discover Defendant's improper use of the Work prior to October 2021.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

19.     Following Plaintiff's discovery of Defendant's infringement, Plaintiff sent at least one infringement notice to Defendant to notify it of the impermissible use.  Defendant ignored the infringement notice and did not otherwise respond to Plaintiff.

20.     Ultimately, Plaintiff was forced to retain counsel to pursue this matter (who itself sent a demand letter/infringement notice via e-mail and Federal Express to Defendant).  It is my understanding that Defendant did not respond to Plaintiff's counsel.

21.     The ability of Defendant to reproduce, modify, distribute and display the Plaintiff's photography for Defendant's own commercial benefit without compensation to Plaintiff greatly impairs the market value of the photographs since others competing with that business, or in related business areas, will not want to obtain a license to Plaintiff's work if they are already associated with a competing business. Similarly, potential licensees of Plaintiff's copyrighted photographs will not want to pay Plaintiff's annual license fees for the entirety of Plaintiff's library if they see other commercial enterprises taking and using Plaintiff's photographs for their own commercial purposes without paying any fee at all.

22.     The Work at issue in this lawsuit has lost significant value by the continuing dissemination resulting from Defendant's infringement.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: February 8, 2021.


REBECCA JONES

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228



PreparedFoodPhotos.com
P.O. Box 1000 • Slatersville, RI. 02876
licensing@PreparedFoodPhotos.com
1-866-609-1548

**Re: Claim Number: 5091803096834517212**
**FRE 408 SETTLEMENT COMMUNICATION**

Monday, October 4, 2021

**Company Name**
Patriot Fine Foods



**Company Address**
6 Quincy Pl,
Kearny, NJ 07032

**Image Name**
RawBeefLondonBroil001_ADL.

**Company Phone Number**
(201) 428-1133

**Registration Number**
VA0002026514

**URL Containing Image**
https://shop.patriotfinefoods.net/products/6059014ea446b3
0026a32824/usda-prime-angus-london-broil-2



EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:21-CV-82129-DMM

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

      Plaintiff,

v.

PATRIOT FINE FOODS LLC,

      Defendant.

_____

## <u>DECLARATION OF DANIEL DESOUZA</u>

Daniel DeSouza does hereby declare pursuant to 28 U.S.C. § 1746:

1.      I submit this declaration in support of plaintiff Prepared Food Photos, Inc. f/k/a

Adlife Marketing & Communications Co., Inc.'s ("<u>Plaintiff</u>") Motion for Default Final Judgment

against defendant Patriot Fine Foods LLC ("<u>Defendant</u>").  This declaration and the facts stated

herein are based upon my personal knowledge.

2.      I have been a member in good standing of the New York Bar since 2005 and the

Florida Bar since 2006.  I am one of two principal shareholders of the law firm CopyCat Legal

PLLC ("<u>CopyCat Legal</u>"), which has provided legal services to Plaintiff in this action throughout

the pendency of this action.

3.      I am a 2004 graduate of the George Washington University Law School and am

admitted to both the Florida Bar and the New York Bar.  I am likewise admitted to several federal

courts throughout the country, including: (a) the United States Court of Appeals for the Eleventh

Circuit; (b) the United States Court of Appeals for the Eighth Circuit; (c) the United States District

Court for the Southern District of Florida; (d) the United States District Court for the Middle District of Florida; (e) the United States District Court for the Northern District of Florida; (f) the United States District Court for the Southern District of Texas; (f) the United States District Court for the Southern District of New York; (g) the United States District Court for the Eastern District of New York; and (h) the United States District Court for the Western District of Arkansas.  I previously worked at Milbank, Tweed, Hadley & McCloy LLP (from 2004 – 2010) and Becker & Poliakoff, PA (from 2010 – 2014) before forming DeSouza Law, P.A. in 2014 and CopyCat Legal in 2019.

4.      Since 2004, my practice has principally focused on business/complex commercial and intellectual property litigation.  During that time, I have served as counsel of record in dozens of copyright infringement, trade secret, and trademark infringement lawsuits.  In total, I have served as counsel of record in approximately 150 federal civil and/or bankruptcy actions and 250+ state court lawsuits in Florida/New York.

5.      The purpose of this declaration is to memorialize the fees for legal services, costs, and expenses provided by CopyCat Legal in the above-captioned case through the present date.

6.      CopyCat Legal establishes standard hourly rates for services provided by its attorneys.  These rates are within the range charged by other lawyers in South Florida and are fair and reasonable rates for this type of work.

7.      I am familiar with the services provided to Plaintiff in this action and the rates charged for such work.

8.      The attorneys and paralegals at CopyCat Legal record the time spent on matters contemporaneously on electronic billing software/time sheets.  Each time entry includes the date the work is performed, the client and matter numbers, the time spent, and a brief description of the

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

nature of the work performed.

9.      Through the present date, I expended 4.5 hours of attorney time in prosecuting this matter on Plaintiff's behalf.  This includes the time spent to investigate the alleged infringement, drafting an initial notice letter to Defendants, drafting the Complaint in this matter, drafting the Motion for Entry of Default Judgment, and drafting the exhibits/supporting declarations for such motion.  All of these time entries are reflected in CopyCat Legal's billing records that are being provided in connection herewith as **Exhibit "1."**

10.     My billable rate for copyright/intellectual property matters at CopyCat Legal is $450.00 per hour and the rate for paralegals is $125.00 per hour.  This rate is within the range charged by other lawyers in South Florida with similar experience/background and is fair and reasonable for this type of work.  See, e.g. Shelton v. Liberty Mut. Fire Ins. Co., No. 8:12-cv-2064-T-30AEP, 2014 U.S. Dist. LEXIS 19874, at *6 (M.D. Fla. Feb. 18, 2014) (finding $425.00 per hour reasonable for AV-rated lead attorney who "has been practicing for nearly 17 years"); Ikpe v. Kreative Therapy & Rehab Ctr., Inc., Case No. 18-23217-CIV, 2019 U.S. Dist. LEXIS 47106, at *2 (S.D. Fla. Mar. 20, 2019) (J. Williams) (holding that $400.00 per hour was a reasonable rate for an attorney with 16 years of experience in an FLSA case); ADT LLC, v. Sec. Networks, LLC, No. 12-81120-Civ-Hurley/Hopkins, 2018 U.S. Dist. LEXIS 5974, at *25 (S.D. Fla. Jan. 11, 2018) (finding rates of $425.00 - $440.00 per hour reasonable for attorney with over 15 years experience, admitted to multiple states, and who practices complex commercial litigation); Bork v. Quynh, No. 2:19-cv-354-FtM-38MRM, 2020 U.S. Dist. LEXIS 202810, at *4 (M.D. Fla. Oct. 14, 2020) (hourly rate of $450.00 per hour reasonable for 10-year attorney in copyright infringement lawsuit); Newman v. Eduardo Meloni, P.A., No. 0:20-CV-60027-UU, 2020 U.S. Dist. LEXIS 163064 , at *2 (S.D. Fla. Sept. 4, 2020) (finding a $450 per hour requested rate reasonable in class

action lawsuit for senior partner with sixteen years of experience and a $350 per hour requested rate reasonable for associate with more than five years of experience); Parrot, Inc. v. Nicestuff Distrib. Int'l, Inc., 2010 U.S. Dist. LEXIS 16128, 2010 WL 680948, at *12 (S.D. Fla. Feb. 24, 2010) (finding reasonable hourly rates for commercial litigator with 22 years of experience to be in the range of $475.00 - $500.00).

11.    I am familiar with the lodestar method of determining the reasonableness of attorneys' fees, which the Florida Supreme Court referenced in Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145, 1149-52 (Fla. 1985).  The fees charged are reasonable for the services provided to Plaintiff.

12.    In addition, CopyCat Legal incurred $500.20 in actual costs on Plaintiff's behalf in connection with pursuing this lawsuit, all of which is properly taxable.  This includes $402.00 in filing fees and $73.20 for service of process on Defendant.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: February 8, 2022                    /s/ Daniel DeSouza
                                           Daniel DeSouza

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

EXHIBIT "1"

**Copycat Legal PLLC**
3111 N University Drive
Suite 310
Coral Springs, FL 33065
877-437-6228



**Prepared Food Photos, Inc.**
38 Church Street
Pawtucket, RI 02860
United States

| | |
|---|---|
| **Balance** | $2,525.20 |
| **Invoice #** | 00105 |
| **Invoice Date** | February 8, 2022 |
| **Payment Terms** | |
| **Due Date** | |

---

**Prepared Food Photos, Inc. v. Patriot Fine Foods LLC**

**Securely pay online with your credit card**

 https://copycat-legal-pllc.mycase.com/xnewvryz

### Time Entries

| DATE | EE | ACTIVITY | DESCRIPTION | RATE | HOURS | LINE TOTAL |
|---|---|---|---|---|---|---|
| 12/11/2021 | DD | Time | Review client file of registration/infringement information (.7); draft demand letter and complaint for service on Shadowbrook (1.6). | $450.00 | 2.3 | $1,035.00 |
| 01/14/2022 | DD | Time | Draft motion for clerk's default (.2); review correspondence and docket re same (.2). | $450.00 | 0.4 | $180.00 |
| 02/03/2022 | DD | Time | Draft motion for default final judgment, declarations of Doug Fleurant and Daniel DeSouza, and proposed final judgment (1.8). | $450.00 | 1.8 | $810.00 |
| | | | | Totals: | **4.5** | **$2,025.00** |

### Expenses

| DATE | EE | ACTIVITY | DESCRIPTION | COST | QUANTITY | LINE TOTAL |
|---|---|---|---|---|---|---|
| 10/12/2021 | HT | Federal Express | Demand package sent to Michael Cacace | $25.00 | 1.0 | $25.00 |
| 11/24/2021 | HT | Complaint Filing Fee | Filed complaint with Southern District of Florida | $402.00 | 1.0 | $402.00 |
| 12/10/2021 | HT | Process Server | Callahan Process Server - Invoice 2103598 for Service of Process on Patriot Foods | $73.20 | 1.0 | $73.20 |
| | | | | | Expense Total: | **$500.20** |

| | |
|---|---|
| Time Entry Sub-Total: | $2,025.00 |
| Expense Sub-Total: | $500.20 |
| **Sub-Total:** | $2,525.20 |
| **Total:** | $2,525.20 |
| **Amount Paid:** | $0.00 |
| **BALANCE DUE:** | **$2,525.20** |