IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:21-CV-82129-DMM

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

    Plaintiff,

v.

PATRIOT FINE FOODS LLC,

    Defendant.

_____

## FINAL JUDGMENT AND PERMANENT INJUNCTION

**THIS CAUSE** is before the Court upon plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc.'s ("Plaintiff") Motion for Default Final Judgment (the "Motion") [D.E. __]. The Court has considered the Motion, has noted the Clerk's default against defendant Patriot Fine Foods LLC ("Defendant"), and is otherwise advised in the premises.

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, the Court concludes that Plaintiff has met its burden of showing that it is entitled to a final default judgment as to Defendant. Plaintiff has also met its burden of showing that it is entitled to permanent injunctive relief against Defendant as specified herein.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

**I.   Findings of Fact**[1]

    1.    Plaintiff is in the business of licensing high-end, professional photographs for the

---

[1] A district court must exercise "independent judgment" in adopting a party's proposed findings. Bright v. Westmoreland Cnty., 380 F.3d 729, 731-32 (3rd Cir. 2004). In this case, the Court has independently analyzed the evidence presented and has adopted only those findings which the Court has independently deemed appropriate under the circumstances.

food industry.

2. Through its commercial website (www.preparedfoodphotos.com), Plaintiff offers a monthly subscription service which provides access to/license of tens of thousands of professional images.

3. As of the date of this pleading, Plaintiff charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a monthly fee of $999.00 for access to its library of professional photographs.

4. Plaintiff does not license individual photographs or otherwise make individual photographs available for purchase. Plaintiff's business model relies on its recurring monthly subscription service such that Plaintiff can continue to maintain its impressive portfolio.

5. Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers. To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only. Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

6. As detailed in the Complaint and the attachments thereto, Plaintiff owns the photograph titled "RawBeefLondonBroil001_ADL" (the "Work"). The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on January 11, 2017 and was assigned Registration No. VA 2-026-514.

7. Plaintiff is the owner of the Work and has remained the owner at all times material hereto.

8. Defendant owns and operates an online wholesale delivery butcher shop in New Jersey through which it offers for sale 200+ prime meats, seafood, produce, and gourmet items.

9. On a date after Plaintiff's above-referenced copyright registration of the Work, Defendant published the Work on its https://shop.patriotfinefoods.net/?c=604fb8c9373a5d00274175de website in connection with the sale of "USDA Prime Angus London Broil."

10. Defendant is not and has never been licensed to use or display the Work. Defendant never contacted Plaintiff to seek permission to use the Work in connection with the aforementioned use or for any other purpose.

11. Defendant utilized the Work for commercial use – namely, in connection with the sale of its beef product(s).

12. Plaintiff first discovered Defendant's unauthorized use/display of the Work in October 2021, notified Defendant of its infringement, and attempted to negotiate a reasonable license fee for Defendant's past use. Plaintiff (prior to retaining counsel) sent at least one infringement notice to Defendant, yet Defendant did not respond to Plaintiff.

**II.     Conclusions of Law**

   **A.     *Applicable Legal Standards***

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default. Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment,

and is barred from contesting on appeal the facts thus established." Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987).

The Court must review the sufficiency of the complaint before determining if a moving party is entitled to default judgment. See U.S. v. Kahn, 164 F. App'x 855, 858 (11th Cir. 2006) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206) (5th Cir. 1975); Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007). "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to show its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). If the admitted facts are enough to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount. See Nishimatsu, 515 F.2d at 1206. An evidentiary hearing on damages is not required by Rule 55, and it is within the Court's discretion to choose whether to hold such a hearing. See Fed. R. Civ. P. 55(b)(2); SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); Tara Productions, Inc. v. Hollywood Gadgets, Inc., 449 F. App'x 908, 911-12 (11th Cir. 2011).

### B. *Copyright Infringement*

The Copyright Act, 17 U.S.C. § 501(a), provides that "(a)nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)]... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). "Copyright infringement has two elements: (1) ownership of a valid copyright, and (2) copying of protectable elements." Home Design Servs., Inc. v. Turner Heritage Homes Inc., 825 F.3d 1314, 1320 (11th Cir. 2016).

With respect to the first element, a certificate of registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "Once a plaintiff produces a valid registration, the burden shifts to the defendant to establish that the work in which the copyright claimed is unprotectable." Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1233 (11th Cir. 2010). Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights and was assigned a registration number. Defendant's default forecloses any challenge by Defendant as to Plaintiff's registration/ownership of a valid copyright, and therefore Plaintiff has satisfied the first element.

The copying element of an infringement claim has two components. Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1232 (11th Cir. 2010). First, a plaintiff must demonstrate that the defendants copied the plaintiff's work as a factual matter. Id. Second, the plaintiff must establish "substantial similarity" between the allegedly infringing work and the elements of the copyrighted work that are legally protected. Id. at 1233.

Here, the screenshot of Defendant's website unequivocally show Defendant's copying of the Work. Defendant's default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendant copied and published a duplicate image of the Work. Thus, Defendant undisputedly copied Plaintiff's copyrighted Work and Plaintiff has met its burden on each element for the subject claim.

C.   *Willfulness*

Willful infringement occurs when the defendant acts "with 'actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright.'" Arista Records, Inc. v. Beker Enterprises, Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (J. Cohn) (citing Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc., 658 F. Supp. 458, 464

(E.D.Pa.1987)). "Moreover, this Court may infer that Defendants willfully infringed Plaintiffs' copyrights because of Defendants' default." Id. at 1313 (citations omitted). When awarding increased damages in the context of Section 504(c)(2), "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." Cable/Home Communication Corp. v. Network Productions, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted).

Here, Plaintiff notified Defendant of its infringement. Defendant ignored Plaintiff's pre-suit notice. Plaintiff was then forced to retain counsel to pursue the matter who likewise sent a pre-suit infringement notice to Defendant (via e-mail and Federal Express) which was also ignored. Defendant's refusal to respond and/or pay a reasonable licensing fee demonstrate that Defendant had actual knowledge, or at least acted with reckless disregard, of the fact that its conduct infringed upon Plaintiff's exclusive copyrights in the Work. In fact, at the time the Motion for Default Final Judgement was filed, the Defendant had not removed the infringing photograph from its website (https://shop.patriotfinefoods.net/?c=604fb8c9373a5d00274175de) despite being placed on notice by this lawsuit and the other communications sent to Defendant.

Accordingly, Defendant's default and the well-pled facts of the Complaint, which are admitted by Defendant's default, establish that Defendant's infringement of the Work was willful and deliberate.

### D. *Plaintiff's Damages*

#### 1. **Actual Damages**

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages are "often measured by the revenue that the plaintiff lost as a result of the infringement, which includes lost sales, lost

opportunities to license, or diminution in the value of the copyright." Lorentz v. Sunshine Health Prods., No. 09-61529-CIV-MORE, 2010 U.S. Dist. LEXIS 148752, at *12 (S.D. Fla. Sep. 7, 2010).

The copyright owner may also recover the fair market value of the licensing fee that would have been charged for the work that was infringed. Id. at 15. To demonstrate entitlement to a reasonable license fee, the fair market value of an infringed work may be established by "evidence of benchmark licenses, that is, what licensors have paid for use of similar work." Thornton v. J. Jargon Co., 580 F. Supp. 2d 1261 (M.D. Fla. 2008) (citing Montgomery v. Noga, 168 F.3d 1282, 1295 n.19 (11th Cir. 1999)).

Plaintiff generally operates on a subscription basis whereby it provides access to its library at $999.00 per month with a minimum twelve (12) month contract commitment (i.e. a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year). Plaintiff generally does not license individual photographs as doing so greatly diminishes the value of Plaintiff's subscription model. Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc. Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products/services.

Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of Plaintiff's library. Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees. Plaintiff incurs these expenses (payroll etc.) to protect the integrity of its library.

7
COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

Plaintiff's library of photographs was created over a 15 – 20 year period of time (with new creative works being made through the present date). Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography. All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal. For any image (including the one at issue in this lawsuit), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1 – 2 for inclusion in Plaintiff's library. For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising.

When Plaintiff's staff discovers an existing (i.e. published and available for viewing on the internet) infringement of one of its photographs, Plaintiff creates an infringement notice on the date of discovery or within 1 – 2 days thereafter. The infringement notice identifies the date of discovery, displays the subject photograph, and displays a screenshot of the infringer's alleged use together with a website URL (if available) where the infringement is located.

The aforementioned infringement notices show that the Work was published by Defendant at least as of October 2021. Defendant's failure to participate in this lawsuit has limited Plaintiff's ability to conduct discovery to fully discover the extent of its infringement and/or the exact date on which the Work was uploaded. Sources such as the Wayback Machine and inspecting the URL/page source of the website were unhelpful in determining precisely when the Work was

published by Defendant. This tremendously hinders Plaintiff's ability to determine its damages because, for each year that Defendant published the Work, Plaintiff would be owed an annual license fee of $11,988.00. Thus, if Defendant published the Work in 2018, Plaintiff would have lost 3x annual licensing terms (as a result of the Supreme Court's 3-year lookback period) equivalent to $35,964.00 in actual damages. Here, it is only known that the Work was published as of October 2021 (when Plaintiff initially discovered the infringement) and remains published by Defendant *today*. Given these facts, Plaintiff proffers that the cost for the contractual minimum 1-year license ($11,988.00) is the most accurate measure of Plaintiff's actual damages based on presently-known facts.

Defendant's inaction and refusal to participate in this lawsuit suppressed the information necessary to fully calculate Plaintiff's actual damages. Similarly, Defendant's refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendant that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses. To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Defendant solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

2.    **Statutory Damages for Copyright Infringement**

Pursuant to 17 U.S.C. § 504(c), Plaintiff hereby elects to recover statutory damages for Defendant's infringement of Plaintiff's exclusive rights in the copyrighted Work, and enhancement of its statutory award based upon the willfulness of such infringement. Where (as

here) willful infringement has occurred, courts in this Circuit will generally look to a plaintiff's actual damages and award 2x – 3x to properly account for statutory damages. See, e.g. Corson v. Gregory Charles Interiors, LLC, No. 9:19-cv-81445, 2020 U.S. Dist. LEXIS 142932, at *5-7 (S.D. Fla. Aug. 7, 2020) (trebling the plaintiff's actual damages after applying a scarcity multiplier); Buttnugget Publ'g v. Radio Lake Placid, Inc., 807 F. Supp. 2d 100, 110-11 (N.D.N.Y. 2011) ("[T]o put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees.").

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work. See 17 U.S.C. § 504(c)(1). However, as discussed above, Defendant's conduct – as well as its decision not to defend against Plaintiff's claim – demonstrates that its conduct is willful. Given the circumstances of the instant case, Plaintiff submits that an award of statutory damages in the amount of ***$35,964.00*** ($11,988.00 x 3) under 17 U.S.C. § 504(c)(2) is appropriate to compensate Plaintiff for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages, and to deter future violations of copyright law.

### E.     Costs and Attorneys' Fees

Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party… the court may also award reasonable attorney's fee to pay the prevailing party as part of the costs." Upon entry of a final judgment, Plaintiff is the prevailing party in this action. In view of the willful nature of Defendant's infringement and failure to defend or otherwise participate in this action, leading to unjustified delays and increased costs and fees, an award of full costs and attorney's fees to Plaintiff is appropriate.

17 U.S.C. § 1203(b)(5) likewise provides "the court … in its discretion may award reasonable attorney's fees to the prevailing party…," providing a second statute for an award of Plaintiff's full costs and attorney's fees.

The Court finds that an award of attorneys' fees and costs is appropriate here. Defendant's willful conduct, failure to engage Plaintiff in an attempt to pay a reasonable licensing fee, and failure to participate in this lawsuit resulted in unnecessary fees and costs being incurred. The Court has reviewed the declaration of Plaintiff's counsel filed together with the Motion and finds such declaration to support the amount of fees and costs being sought.

The Court finds that the costs sought by the Motion ($487.00) are taxable against Defendant. These costs consist of the filing fee for this lawsuit and the service of process costs.

Having concluded Plaintiff is entitled to attorneys' fees, the Court must now determine the reasonableness of Plaintiff's requested fee amount. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "This number is called the lodestar." Ela v. Destefano, 869 F.3d 1198, 1203 (11th Cir. 2017). "[T]here is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." Id. But "[u]ltimately, the computation of a fee award is necessarily an exercise of judgment, because there is no precise rule or formula for making these determinations." Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001).

The Court has performed the lodestar analysis and finds that Plaintiff's counsel reasonably expended 4.5 hours in connection with pursuing this matter. The Court further finds that $450.00 is a reasonable hourly rate for Plaintiff's counsel (Daniel DeSouza) in this action given the complexity of the matter, the results obtained, and the experience of Plaintiffs' counsel which the

Court found to be substantial. Mr. DeSouza is a 2004 graduate of the George Washington University Law School who is admitted to both the Florida Bar and the New York Bar. He previously worked at Milbank, Tweed, Hadley & McCloy LLP (from 2004 – 2010) and Becker & Poliakoff, PA (from 2010 – 2014) before forming DeSouza Law, PA in 2014 and jointly forming CopyCat Legal PLLC in 2019. He is admitted to a multitude of federal courts throughout the country and has extensive experience litigating cases in both federal and state court. Given the above, the Court has calculated the lodestar amount to be $2,025.00.

### F.     *Permanent Injunction*

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. Injunctions are regularly issued pursuant to Section 502 because "the public interest is the interest in upholding copyright protections"; and courts also regularly issue injunctions as part of default judgements. Arista Records, 298 F. Supp. 2d at 1314 (entering permanent injunction against defendants with respect to plaintiff's copyrighted work, including plaintiff's work to be created in the future).

Here, Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law. For example, the ability of Defendant to use Plaintiff's Work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the Work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's work if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiff's

photographs for its own commercial purposes without paying any fee at all.

Accordingly, this Court will enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant, prohibiting them from (a) directly or indirectly infringing Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any work derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

**III.     Conclusion**

Judgment is hereby entered in favor of Plaintiff, Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc., and against defendant Patriot Fine Foods LLC, as follows:

1.     Plaintiff shall recover from Defendant the principal sum of $38,489.20, for which let execution issue. The foregoing sum consists of $35,964.00 (statutory damages for copyright infringement), $500.20 (costs), and $2,025.00 (attorneys' fees).

2.     Pursuant to Fed. R. Civ. P. 69(a) and Fla. R. Civ. P. 1.560, the judgment debtor, Patriot Fine Foods LLC, shall complete, under oath, a Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on the judgment creditor's attorney, Daniel DeSouza Esq., CopyCat Legal PLLC, 3111 N. University Drive, Suite 301, Coral Springs, FL 33065, within 45 days from the date of this Final Judgment, unless the Final Judgment is satisfied or post-judgment is stayed. Failure to complete the fact information

sheet shall be just cause for further sanctions. See, e.g., Biggross, Inc. v. Matthews, No. 8:02-CV-1216-T-MAP, 2007 WL 2827566, at *1 (M.D. Fla. Sept. 27, 2007) (awarding sanctions for a defendant's failure to fill out a fact information sheet).

3. Patriot Fine Foods LLC, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Patriot Fine Foods LLC, are permanently enjoined from (a) directly or indirectly infringing Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any work derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this __ day of _____, 2022.

_____
Donald M. Middlebrooks
United States District Judge